**Mohamad ELCHEHIMI, Individually and as Parent and Next Friend of K.E. and L.E., Minor Children, Appellant,**

v.

**NATIONWIDE INSURANCE COMPANY, Appellee.**

**No. 10–04–00298–CV.**

Court of Appeals of Texas, Waco.

Dec. 28, 2005.

---

Garry Philip Cantrell, Cantrell Law Firm, Carrollton, for appellant.

Mark E. Macias, San Antonio, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Mohamad Elchehimi filed suit to recover under the uninsured motorist provisions of his automobile insurance policy for injuries his children and he suffered after his car was struck by an axle and attached wheels which broke away from a truck tractor driving in the opposite direction on a divided highway. The trial court granted Nationwide Insurance Company's summary judgment motion. Elchehimi contends in his sole issue that a genuine issue of material fact remains on the question of whether the collision is sufficient to constitute "actual physical contact" with the semi as required for uninsured motorist coverage under article 5.06–1(2)(d) of the Insurance Code. We will reverse and remand.

### Texas Law

Article 5.06–1(2)(d) provides in pertinent part:

> in order for the insured to recover under the uninsured motorist coverages where the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, actual physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured.

TEX. INS.CODE ANN. art. 5.06–1(2)(d) (Vernon Supp.2005).

Texas courts have uniformly concluded that this statute excludes from coverage a collision with cargo which has fallen from a vehicle the owner of which is unknown. *E.g. Tex. Farmers Ins. Co. v. Deville,* 988 S.W.2d 331, 332–34 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Republic Ins. Co. v. Stoker,* 867 S.W.2d 74, 77–78 (Tex.App.-El Paso 1993), *rev'd on other grounds,* 903 S.W.2d 338 (Tex.1995); *Williams v. Allstate Ins. Co.,* 849 S.W.2d 859, 859–61 (Tex.App.-Beaumont 1993, no writ).

The San Antonio Court has concluded that the requisite contact did not occur in a case involving a collision between an in-

sured's vehicle and a component of a semi-trailer which had detached from the trailer immediately before colliding with the insured's vehicle. *See Smith v. Nationwide Mut. Ins. Co.*, 2003 WL 21391534 at \*\*2–3 (Tex.App.-San Antonio June 18, 2003, pet. denied) (mem.op.). This is the only Texas decision our research has disclosed on the issue of whether uninsured motorist coverage should be provided when an integral part of an unidentified vehicle collides with an insured's vehicle. In our view however, the San Antonio Court did not give adequate weight to the distinction between cargo which has fallen from an unidentified vehicle and an integral part of an unidentified vehicle which strikes an insured's vehicle in an unbroken chain of events.

A review of decisions from other states which require "physical contact" as a prerequisite to uninsured motorist coverage reveals that a majority of these states which have addressed this issue have concluded that the requisite contact is established when an integral part of an unidentified vehicle collides with an insured's vehicle in an unbroken chain of events. *See Tex. Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 131–32 & nn. 10–12 (Tex.2004) (reviewing decisions of other states to resolve novel coverage issue).

### States With Statutes Requiring Physical Contact

According to our research, twenty-three states [1] besides Texas have statutes which require "physical contact." Of these, nine have expressly held that the requisite contact occurs when an "integral part" of an unidentified vehicle, cargo dropped from an unidentified vehicle,[2] or an object propelled by the tire of an unidentified vehicle collides with the insured vehicle. *See Thi Pham v. Allstate Ins. Co.*, 206 Cal.App.3d 1193, 1198, 254 Cal.Rptr. 152 (2d Dist. 1988); *State Farm Fire & Cas. Co. v. Guest*, 203 Ga.App. 711, 417 S.E.2d 419, 422 (1992); *Ill. Natl. Ins. Co. v. Palmer*, 116 Ill.App.3d 1067, 72 Ill.Dec. 454, 452 N.E.2d 707, 708–09 (1st Dist.1983); *Brooks v. State Farm Mut. Automobile Ins. Co.*, 855 So.2d 419, 423–25 (La.App. 4th Cir. 2003); *Adams v. Zajac*, 110 Mich.App. 522, 313 N.W.2d 347, 349 (1981); *S. Farm Bureau Cas. Ins. Co. v. Brewer*, 507 So.2d 369, 370–72 (Miss.1987); *Allstate Ins. Co. v. Killakey*, 78 N.Y.2d 325, 574 N.Y.S.2d 927, 580 N.E.2d 399, 401 (1991); *Barfield v. Ins. Co. of N. Am.*, 59 Tenn.App. 631, 443 S.W.2d 482, 486 (1968); *Theis v. Midwest Sec. Ins. Co.*, 232 Wis.2d 749, 606 N.W.2d 162, 167–68 (2000).

Of these nine states, six have expressly referenced a requirement of temporal

---

**1.** ALASKA STAT. § 28.20.445(f); ARIZ.REV.STAT. § 20–259.01(M); CAL. INS.CODE § 11580.2(b)(1); GA.CODE ANN. § 33–7–11(b)(2); 215 ILL. COMP. STAT. 5/143a(2)(i); IOWA CODE § 516A.1; KAN. STAT. ANN. § 40–284(e)(3); LA.REV.STAT. ANN. § 22:680(1)(d)(i); MICH. COMP. LAWS § 257.1112; MISS.CODE ANN. § 83–11–103(c)(v); NEB.REV.STAT. § 44–6405(3); NEV.REV.STAT. 690B.020(3)(f)(1); N.Y. INS. LAW § 5217; N.C. GEN.STAT. § 20–279.21(b)(3)(b); N.D. CENT.CODE § 26.1–40–15.1; OR.REV.STAT. § 742.504(2)(f); S.C.CODE ANN. § 38–77–170(2); TENN.CODE ANN. § 56–7–1201(e)(1)(A); UTAH CODE ANN. § 31A–22–305(5); VA.CODE ANN. § 38.2–2206(D); WASH.

REV.CODE § 48.22.030(8); W. VA.CODE § 33–6–31(e)(iii); WIS. STAT. § 632.32(4)(a)(2)(b). Some of these states allow coverage without physical contact if there is independent corroboration of the cause of the insured's accident.

**2.** As stated, Texas courts of appeals have denied coverage for collisions with cargo dropped from an unidentified vehicle. *E.g. Tex. Farmers Ins. Co. v. Deville*, 988 S.W.2d 331, 332–34 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

proximity for coverage. *See Thi Pham,* 206 Cal.App.3d at 1196–97, 254 Cal.Rptr. 152 ("uninterrupted chain" with "no intervening force to break the chain of causation"); *Palmer,* 72 Ill.Dec. 454, 452 N.E.2d at 708 ("continuous and contemporaneously transmitted force"); *Brooks,* 855 So.2d at 423–24 ("unbroken chain of events"); *Brewer,* 507 So.2d at 372 ("unbroken chain of events"); *Adams,* 313 N.W.2d at 349 ("continuous and contemporaneously transmitted force"); *Killakey,* 580 N.E.2d at 401 ("unbroken chain of events"). Two others involved scenarios in which temporal proximity was present. *See Barfield,* 443 S.W.2d at 486 (requiring coverage "when a wheel of one vehicle hurls an object, such as a stone, into and against another vehicle"); *Theis,* 606 N.W.2d at 164, 167–68 (requiring coverage when leaf spring "was propelled into the plaintiff's vehicle by the passing semi-tractor"). In only one of the nine was there no reference to temporal proximity. *See Guest,* 417 S.E.2d at 422 (requiring coverage when insured vehicle struck tire assembly which "was negligently attached to an unknown vehicle from which it fell and left in the roadway").

West Virginia has not addressed whether contact by an "integral part" of an unidentified vehicle would suffice, but the West Virginia Supreme Court has held that actual contact is not required if the insured shows "a close and substantial physical nexus between an unidentified hit-and-run vehicle and the insured vehicle."[3] *Dunn v. Doe,* 206 W.Va. 684, 527 S.E.2d 795, 800 (1999).

North Carolina and Washington have required coverage in cases involving "indirect contact," in which the unidentified vehicle collided with a vehicle which in turn collided with the insured's vehicle.[4] *See McNeil v. Hartford Accident & Indemn. Co.,* 84 N.C.App. 438, 352 S.E.2d 915, 917 (1987); *Johnson v. State Farm Mut. Automobile Ins. Co.,* 70 Wash.2d 587, 424 P.2d 648, 649–50 (1967); *accord Latham v. Mountain States Mut. Cas. Co.,* 482 S.W.2d 655, 657 (Tex.Civ.App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.).

Nine states[5] have not addressed this particular issue, although the Nevada Supreme Court has concluded that an accident caused by oil purportedly spilled on the highway by an unknown vehicle is not covered. *See Kern v. Nev. Ins. Guar. Assn.,* 109 Nev. 752, 856 P.2d 1390, 1394 (1993). However, that court did suggest that coverage may be required for a "collision between an uninsured/hit-and-run driver or automobile (or an integral part of the automobile)" and an insured's vehicle. *Id.*

Finally, only South Carolina has expressly rejected coverage when "an integral part" of an unidentified vehicle (a wheel bearing) struck the insured vehicle. *See Davis v. Doe,* 285 S.C. 538, 331 S.E.2d 352, 353–54 (1985).

Thus, nine of the thirteen states which have statutes requiring physical contact and which have addressed coverage under a scenario similar to the facts of this case would require coverage under the facts

---

**3.** This test arguably includes an element of temporal proximity.

**4.** Cases involving "indirect contact" via an intermediary vehicle necessarily include an element of temporal proximity.

**5.** Alaska, Arizona, Iowa, Kansas, Nebraska, Nevada, Oregon, Utah, and Virginia.

before us. Three others likely would.[6] Only one has expressly rejected coverage under this scenario.

## States With Statutes Requiring "Actual" Physical Contact

Justice Cohen authored a concurring opinion in *Deville* in which he reviewed decisions from other states requiring coverage when a part of an unidentified vehicle strikes the insured's vehicle. 988 S.W.2d at 335–36 (Cohen, J., concurring). Although Justice Cohen characterized these decisions as "highly persuasive" and representative of "the great weight of authority," he declined to follow them because they did not involve statutes requiring "actual" physical contact. *Id.* at 336. Here, we part ways with Justice Cohen.

According to our research, seven other states have statutes requiring "actual" physical contact. *See* GA.CODE ANN. § 33–7–11(b)(2); 215 ILL. COMP. STAT. 5/143a(2)(i); LA.REV.STAT. ANN. § 22:680(1)(d)(i); MISS. CODE ANN. § 83–11–103(c)(v); NEB.REV. STAT. § 44–6405(3); N.D. CENT.CODE § 26.1–40–15.1; TENN.CODE ANN. § 56–7–1201(e)(1)(A). Five of these states would require coverage under the facts before us. *See Guest,* 417 S.E.2d at 422; *Palmer,* 72 Ill.Dec. 454, 452 N.E.2d at 708–09; *Brooks,* 855 So.2d at 423–25; *Brewer,* 507 So.2d at 371–72; *Barfield,* 443 S.W.2d at 486. The others, Nebraska and North Dakota, have not addressed this particular issue.

Thus, a clear majority of states with statutes requiring "actual" physical contact would require coverage under the facts before us.

## States With Statutes Not Requiring Physical Contact

Twenty-six states[7] have statutory schemes for uninsured motorist coverage which do not expressly require "physical contact" as a prerequisite for coverage for a collision involving an unidentified vehicle. Four of these states have approved policy language requiring contact as a prerequisite for coverage.[8] *See State Farm Mut. Automobile Ins. Co. v. Henderson,* 356

6. We do not include Nevada among these, but the language in *Kern* suggests that Nevada may require coverage under similar circumstances.

7. ALA.CODE § 32–7–23; ARK.CODE ANN. § 23–89–403; COL.REV.STAT. § 10–4–609; CONN. GEN. STAT. § 38a–336; DEL.CODE ANN. tit. 18, § 3902(a)(3); FLA. STAT. § 627.727; HAW.REV. STAT. § 431:10C–301; IDAHO CODE ANN. § 41–2502; IND.CODE § 27–7–5–2; KY.REV.STAT. ANN. § 304.20–020; 24–A ME.REV.STAT. ANN. § 2902; MD. INS.CODE ANN. § 19–509; MASS. GEN. LAWS ch. 175, § 113L; MINN.STAT. § 65B.49; MO. REV.STAT. § 379.203; MONT.CODE ANN. § 33–23–201; N.H.REV.STAT. ANN. § 264:15; N.J. STAT. ANN. § 17:28–1.1; N.M. STAT. § 66–5–301; OHIO REV.CODE ANN. § 3937.18; OKLA. STAT. tit. 36, § 3636; 75 PA. CONSOL. STAT. § 1702; R.I. GEN. LAWS § 27–7–2.1; S.D. CODIFIED LAWS § 58–11–9; VT. STAT. ANN. tit. 23 § 941; WYO. STAT. ANN. § 31–10–101.

8. Conversely, 18 states have found such policy language to be invalid because their statutory schemes did not require contact. *See State Farm Fire & Cas. Co. v. Lambert,* 291 Ala. 645, 285 So.2d 917, 920 (1973); *Farmers Ins. Exch. v. McDermott,* 34 Colo.App. 305, 527 P.2d 918, 919–20 (1974); *Streitweiser v. Middlesex Mut. Assurance Co.,* 219 Conn. 371, 593 A.2d 498, 502–03 (1991); *State Farm Mut. Automobile Ins. Co. v. Abramowicz,* 386 A.2d 670, 674 (Del.1978); *Brown v. Progressive Mut. Ins. Co.,* 249 So.2d 429, 430 (Fla.1971); *DeMello v. First Ins. Co. of Haw., Ltd.,* 55 Haw. 519, 523 P.2d 304, 310 (1974); *Lanzo v. State Farm Mut. Automobile Ins. Co.,* 524 A.2d 47, 50 (Me.1987); *Surrey v. Lumbermens Mut. Cas. Co.,* 384 Mass. 171, 424 N.E.2d 234, 238–39 (1981); *Halseth v. State Farm Mut. Automobile Ins. Co.,* 268 N.W.2d 730, 733 (Minn.1978); *Dawson v. Denney–Parker,* 967 S.W.2d 90, 93 (Mo.App.1998); *McGlynn v. Safeco Ins. Cos. of Am.,* 216 Mont. 379, 701

Ark. 335, 150 S.W.3d 276, 279–80 (2004); *Hammon v. Farmers Ins. Co. of Idaho,* 109 Idaho 286, 707 P.2d 397, 399–400 (1985); *Allied Fid. Ins. Co. v. Lamb,* 361 N.E.2d 174, 177 n. 1 (Ind.App.1977); *Shelter Mut. Ins. Co. v. Arnold,* 169 S.W.3d 855, 856 (Ky.2005).

Of these four states, Indiana, has held that sufficient contact is established when an insured's vehicle collides with a load of debris which has fallen from an unidentified vehicle if the collision occurred as part of "a continuous sequence of events that clearly began with a load of debris falling from an unidentified vehicle and ended in [the insured's] contact with the pile of debris." [9] *Will v. Meridian Ins. Group, Inc.,* 776 N.E.2d 1233, 1237 (Ind.App.2002).

Kentucky has required coverage in cases involving "indirect contact," in which the unidentified vehicle collided with a vehicle which in turn collided with the insured's vehicle. *See Arnold,* 169 S.W.3d at 857. The court observed that this scenario:

> is conceptually the same as if the hit-and-run motorist had first struck a stationary object, such as a road sign, driving the sign forward into Arnold's vehicle, and causing the sign to interpose itself between her vehicle and that of the tortfeasor, preventing the sort of intimate and literal "physical contact" urged by Shelter.

*Id.* The court held that coverage would be required under either scenario.[10] *Id.* In view of the Kentucky court's rationale, it appears likely that the Kentucky court would require coverage under the facts before us.

Thus, it appears that two of the four states which allow a physical contact requirement in an insurance policy even though not required by statute would require coverage under the facts before us. The other two have not addressed this particular issue.

### Summary

A clear majority of those states which have statutes requiring physical contact and which have addressed coverage under a scenario similar to the facts of this case would require coverage under the facts before us. Three others likely would. Half of those states which allow a physical contact requirement in an insurance policy even though not required by statute would likewise require coverage. We find this majority position highly persuasive and will apply it to the facts of this case.

■ Therefore, we hold that when an integral part of an unidentified vehicle collides with an insured's vehicle as a "result of an unbroken chain of events with a

P.2d 735, 739–40 (1985); *Soule v. Stuyvesant Ins. Co.,* 116 N.H. 595, 364 A.2d 883, 884–85 (1976); *Montoya v. Dairyland Ins. Co.,* 394 F.Supp. 1337, 1342 (D.N.M.1975); *Girgis v. State Farm Mut. Automobile Ins. Co.,* 75 Ohio St.3d 302, 662 N.E.2d 280, 283 (1996); *Biggs v. State Farm Mut. Automobile Ins. Co.,* 569 P.2d 430, 433–34 (Okla.1977); *Webb v. United Servs. Automobile Assn.,* 227 Pa.Super. 508, 323 A.2d 737, 744 (1974); *Pin Pin v. Kemper Ins. Cos.,* 431 A.2d 416, 418–19 (R.I.1981); *Clark v. Regent Ins. Co.,* 270 N.W.2d 26, 30–31 (S.D.1978).

9. Like Michigan, Indiana considers temporal proximity "a significant but not dispositive factor." *Will v. Meridian Ins. Group, Inc.,* 776 N.E.2d 1233, 1237 (Ind.App.2002) (quoting *Berry v. State Farm Mut. Automobile Ins. Co.,* 219 Mich.App. 340, 556 N.W.2d 207, 212 (1996)).

10. Like the "indirect contact" cases we discussed hereinabove involving intermediary vehicles, the facts in *Arnold* necessarily include an element of temporal proximity. *See* note 4, *supra.*

clearly definable beginning and ending, occurring in a continuous sequence," then the requisite "actual physical contact" has occurred and coverage is required.

## Application

Elchehimi stated in his summary judgment affidavit:

We were traveling southbound in the 1800 block of U.S. Highway 287 bypass. An unidentified tractor trailer traveling northbound in the same block broke apart. A set of wheels with an attached axle traveled through the median and into oncoming southbound traffic and struck our vehicle causing me to lose control. The unidentified truck driver did not stop.

■ Viewed in the light most favorable to Elchehimi the non-movant, a genuine issue of material fact remains on the question of whether an integral part of an unidentified vehicle collided with his car as a "result of an unbroken chain of events with a clearly definable beginning and ending, occurring in a continuous sequence."

Accordingly, we sustain Elchehimi's sole issue.

We reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

Is an "alligator" a vehicle? Until today, no. But no longer am I confident of that answer. There was no question that the tread of a truck tire which has separated from the tire casing, commonly referred to as an "alligator," when appearing on our nation's highways by the thousands, was not a "vehicle" as defined for uninsured motorist coverage. There is no question that the tread on a tire is an important component part of the vehicle. So over the next 20 years we will be litigating the issue of what is a large enough component part or an important enough component part of a vehicle to be a "vehicle" within the definition for uninsured motorist coverage.

### HOST OF QUESTIONS

Is a metal leaf spring that has broken and fallen out on the highway a component part? It is not the whole spring, or even a whole leaf from a spring, it is just the nasty part that is about 18 inches long with a 90° bend and a lip of about an inch at the end which gives it just enough of a curl that when run over by the vehicle that lost it, or another vehicle, can become airborne and lethal. Is a muffler a vehicle? Is a single tire a vehicle? Is a single bolt or screw a vehicle when it "collides" with the tire of another vehicle causing a blowout and rollover? The fact patterns of what can be attached as a component to a vehicle that may become separated and collide with another vehicle causing damage are endless. I recently saw a photograph of a car with a regular 110 volt home-type window unit air conditioner installed in the right rear window. No, it did not need a long extension cord. It was plugged into the portable generator that had been mounted on the top of the trunk lid. When these items become detached, are they a vehicle for purposes of uninsured motorist coverage?

### LAW VERSUS RESULT

So what we do here today, in the majority opinion, is decide whether the law's consistent application, harsh though it may

seem, is going to yield to a warm, comfortable result. I choose to follow the consistent application of the law and would follow the San Antonio Court when they held that a loading ramp that came loose from a trailer was not a "vehicle" for purposes of uninsured motorist coverage. And it is not because it was part of the trailer because under the definition, the term "vehicle" includes a trailer. The reason the San Antonio Court held it did not meet the definition of "vehicle" was very simple and logical.

> This case is unlike other reported cases because the summary judgment record shows the ramp was not cargo; rather, it was a component of the trailer that detached from the trailer immediately before colliding with Smith's vehicle. Smith contends, essentially, that the ramp was not on the road long enough to become debris; or at the very least, a fact question exists about whether the ramp was debris. We need not determine whether the ramp was debris—whatever it was, it was not a trailer or a motor vehicle, and Smith's policy provides UM coverage only if a "land motor vehicle or trailer" is involved. (footnotes omitted)

*Smith v. Nationwide Mut. Ins. Co.*, No. 04–02–00646–CV, 2003 WL 21391534, *3, 2003 Tex.App. LEXIS 5056, *6–7 (Tex. App.-San Antonio June 18, 2003, pet. denied).

We should dispose of this case with the same simplicity and logic. By the very argument that the wheels and axle were an integral, component *part* of a vehicle, the conclusion that it is *not* a vehicle should be obvious.

### PROBLEMS IN THE MAJORITY'S ANALYSIS

For the majority's theory to work, they know they must connect it in time, thus they add a requirement that the actual physical contact must occur in an unbroken chain of events. This may limit some "alligators" from wandering into the courtroom. But when a truck loses a tire tread—a cap—, how can you distinguish the movement from the initial vehicle from one that ran over it and hurled it into the path of a motorist? Or if you are in the area of Lipsitz's recycling facility, how can you know the wheel assembly came from the running gear of an operating truck, rather than from the load of scrap metal the truck is hauling?

Another problem for the majority's theory is that they have determined it must be an "integral" component part. Defining "integral" component parts is also going to be a rich source of litigation over the next 20 years. I would have thought integral meant something like it was defined in the dictionary—"Essential or necessary for completeness." *The American Heritage College Dictionary*, 706 (3rd Edition, Houghton Mifflin Company 1997). I cannot determine if "integral" will be a limitation on what constitutes a component part or may be an expansion of the scope of component parts leading to liability. If the part is so essential that it is necessary for the operation of the vehicle, then the vehicle would stop and the uninsured motorist could then be identified. But in this instance, the part which separated though large and seemingly important—a drive axel and tandem wheels and tires—did not render the vehicle from whence it came inoperable. Of course, I am assuming it did not come from a load of scrap metal.

Finally, contrary to the extensive discussion of "contact" in the majority opinion, in which a highly suspect survey of state law is conducted, the issue is not limited to contact or actual contact; it is about the

definition of vehicle. That is what the San Antonio Court focused upon and that is the issue we should focus upon. There is no question the wheel assembly made physical contact with the insured's vehicle. The real question is, does the wheel assembly come within the definition of vehicle.

### CONCLUSION

I would rewrite neither the insurance contract nor the insurance code. The axel and tandem wheel set are not a vehicle. I would affirm the trial court's judgment. Because the majority does not, I dissent.